**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| JUDY COHEN, | Civil Action No.: 4:21-cv-03014 |
| Plaintiff, | |
| v. | **STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| NOVARTIS PHARMACEUTICALS CORPORATION, | |
| Defendant. | |

The Parties to the above-captioned action HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-captioned action.

**I.    General**

A.    The Parties shall take reasonable steps to comply with the procedures set forth in this Stipulation.

B.    This Stipulation is intended to streamline production to promote a "just, speedy and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

C.    To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.  The terms of this Stipulation shall be construed so as to ensure the prompt and efficient and proportional exchange of information consistent with the Federal Rules of Civil Procedure the Local Rules, any orders by this Court, and the Court's Civil Case Management Practices.

21

D.      Except as specifically limited herein, this Stipulation governs the production of discoverable documents by the Parties during the litigation.  In the event of transfer to other courts, this Stipulation will remain in effect in all respects, until adopted by the transferee court or replaced by a successor agreement.  This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Federal Rules of Civil Procedure, the Local Rules, the Court's orders, and the Court's Civil Case Management Practices, nor imply that discovery produced under the terms of this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.  Subject to this Stipulation, the Parties' objections and responses to requests for production of documents and interrogatories, and subject to a binding Protective and Confidentiality Order ("Protective Order"), all documents that are responsive to discovery requests and not designated as "privileged" shall be produced in the manner provided herein.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.  Additionally, nothing in this Stipulation shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order pursuant to the Federal Rules of Civil Procedure on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is good cause for the documents' production.

E.      Protected Material: Protected Material shall refer to any information that a Party believes in good faith to be subject to federal, state, or foreign Data Protection Laws or other privacy obligations.  Protected Material constitutes highly sensitive materials requiring special protection.  Examples of such Data Protection Laws include, without limitation, The Health

Insurance Portability and Accountability Act and the regulations thereunder (HIPAA), 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); Genetic Information Non-discrimination Act of 2008 (GINA) (biometric information); The Swiss Federal Act on Data Protection of 19 June 1992 (FADP) and the Swiss Revised Federal Act on Data Protection of 25 September 2020 (Revised FADP); Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the Protection of Natural Persons with Regard to the Processing of Personal Data and on the Free Movement of Such Data (General Data Protection Regulation or GDPR).

F.      The Parties agree to promptly alert all other Parties concerning any technical problems associated with complying with this Stipulation.  To the extent compliance with this Stipulation imposes an undue burden with respect to any protocol, source, or search term listed herein, the Parties shall promptly confer in an effort to resolve the issue.

G.      Consistent with their obligations under applicable Federal Rules of Civil Procedure, the Parties will attempt to resolve, in person, in writing (including e-mail) or by telephone, disputes regarding the issues set forth herein prior to filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

## II.      Production Format – Hardcopy

At the Producing Party's discretion, hardcopy documents should be scanned as in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e*., .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN."  The documents should be logically unitized (*i.e*., distinct documents should

not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original document contains relevant information in color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI with a minimum quality level of 75, 24-bit, color JPG images.  To the extent that the Producing Party OCR's the document for its own benefit, OCR should also be provided.  The OCR software should maximize text quality over process speed.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

III.     **Production Format – Electronically Stored Information**

        Unless specifically addressed elsewhere in this protocol, electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format.  All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Appendix 1, attached hereto, to the extent captured at the time of the collection.  To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced without undue burden or expense, nothing in this Stipulation shall require any Party to extract, capture, collect or produce such data.  An .opt image cross-reference file should also be provided for all TIFF images.  Specifications for the load files are listed in Appendix 2.

        TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFF images of e-mail messages should include the BCC line.  PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide

4

and the speaker's notes on the TIFF/JPG image.  Color originals of all PowerPoint documents and ESI produced from social media websites shall be produced unless they are unavailable for production.  All other documents may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorical or wholesale requests are deemed invalid.

     If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided.  No native ESI items will be produced for redacted items, except when producing redacted TIFF images is not technically reasonable or for native spreadsheets redacted using a native redaction tool.  If documents requested in native format require redactions and reasonably cannot be produced in TIFF, the Parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should meet and confer in good faith.

## IV.    Previously Collected and Produced Data

     The Parties agree that there is no obligation to recollect or reproduce any prior collections or productions collected or produced prior to the entry of this ESI Stipulation.  This includes not

requiring either Party to reproduce productions in the production format outlined in this ESI Stipulation.

**V.      Production – Handling Completely Non-Responsive Documents Attached to Production-Eligible Documents**

In an effort to avoid unnecessary expense and burden, the Parties agree that completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet containing the text stating the document has been withheld as non-responsive.  For all attachments withheld as non-responsive, the Producing Party agrees to produce as part of the metadata load files the ESI metadata listed in Appendix A (with the exception of text).  When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

**VI.      Production – Receipt and Storage of Protected Material**

The recipient of any Protected Material that is provided under this Stipulation shall maintain such information in a reasonably secure and safe manner that ensures access is limited to the persons authorized herein, and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as the recipient would use with respect to its own proprietary information.

If the recipient discovers any loss of Protected Material or a breach of security, including any actual or suspected unauthorized access, relating to the produced Protected Material, the Receiving Party shall:

A.      Promptly provide written notice to Producing Party of such breach within twenty-four (24) hours of the breach discovery.

B.      Investigate and make reasonable efforts to remediate the effects of the breach, and provide Producing Party with assurances that such breach shall not recur.

C.      Provide sufficient information about the breach that the Producing Party can reasonably ascertain the size and scope of the breach.  The Requesting Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

D.      The Requesting Party shall promptly take all necessary and appropriate corrective action to terminate the unauthorized access and/or correct the breach.

## VII.    Production Format - Structured Data

To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database, the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data.

## VIII.   Production Format – Social Media

ESI from social media websites (e.g., LinkedIn, Facebook, Twitter) may be produced by capturing information through "screen shots" or "screen captures" and converting same into images along with corresponding extracted text or OCR unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from LinkedIn or downloading a copy of an individual's Facebook data or archive.

## IX.    Production Format - Media

Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (e.g., FTP) or similar secure electronic transmission.  The production media shall be labeled with the Volume Number along with the Bates Number range(s) of the materials, and where not practicable to do so, may be provided in an accompanying letter.  Any document production that may contain Protected Material shall be produced in encrypted form and the production media shall be labeled "MAY CONTAIN NON-

PUBLIC PERSONAL INFORMATION" or "MAY CONTAIN CONFIDENTIAL HEALTH INFORMATION" as applicable. If a Producing Party encrypts or "locks" the production, the Producing Party shall send, under separate cover, an explanation of how to decrypt the files.

## X.     Processing and Other Specifications

A.     <u>On-Site Inspections</u>: On-site inspections of ESI under Rule 34(b) shall not be permitted absent a good-faith showing by the Requesting Party of good cause and specific need or upon agreement of the Parties. As appropriate, the Court may condition on-site inspections of ESI, as authorized in the preceding sentence, to be performed by independent third-party experts, and the Court may set other conditions deemed appropriate by the Court.

B.     <u>Bates Numbering and Confidentiality Designations</u>: Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

C.     <u>ESI Date and Time Processing</u>: Each Party's ESI should be processed using Greenwich Mean Time (GMT) / Universal Coordinated Time (UTC).

D.     <u>Global or Horizontal Deduplication</u>: Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match).

Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the CUSTODIAN metadata field subject to any exceptions provided in this Stipulation.

      E.    <u>Email Thread Suppression</u>: Each Party may also deduplicate e-mails in such a way as to eliminate earlier or incomplete chains of e-mails, and produce only the most complete iteration of an e-mail chain.

      F.    <u>Embedded Objects</u>: Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded unless otherwise subject to an exception provided within this Stipulation.

      G.    <u>Compressed Files</u>: Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

      H.    <u>Redactions</u>: The Producing Party can redact documents for privilege or otherwise Protected Material, personally identifiable information, protected health information, and non-responsive content within a responsive document. The Parties may, at their own expense, apply redactions to non-responsive highly sensitive or confidential data within relevant documents. If, during the course of discovery, the Parties identify other kinds of information that any Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such

redactions are made.  If the issue cannot be resolved, the Parties will seek resolution from the Court.

When a document is redacted, the document will be produced in TIFF image unless otherwise agreed to by the parties (e.g., if a native document that requires redaction is difficult to convert to TIFF or is not reasonably usable when converted to TIFF format, the Producing Party can redact in native format).  The TIFF image for a document produced in redacted form will include a label identifying the redacted area of the document and reason for redaction.  For redacted items that were originally ESI, non-redacted metadata fields will be provided.

If during the course of litigation, a data subject with privacy rights pursuant to the Data Protection Laws identified herein exercises his or her right to erasure of personal data contained within the previously produced Protected Material, the Producing Party shall furnish newly redacted versions of the Protected Material within a reasonable time.  The Requesting Party will promptly destroy the original version of the Protected Material and replace it with the redacted version.  The Producing Party may also require the entire document destroyed and replaced with a slip-sheet indicating the Protected Material is subject to erasure pursuant to the applicable Data Protection Law.

I.      Foreign Language Documents: To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

**XI.    Identification and Collection of Documents**

A.      The Producing Party shall conduct a reasonable and good faith search for documents and ESI that are subject to production under the Federal Rules of Civil Procedure.  To

filter ESI for relevancy prior to review and production, a Producing Party may do one or more of the following, so long as the process used meets the standard of care promulgated in Fed. R. Civ. P.: (i) use key word search terms that it in good faith believes will capture responsive ESI and review search term hits for responsiveness, (ii) limit the collection and review of ESI to the custodians the Producing Party reasonably believes have unique documents responsive to the document requests and to those sources of ESI that custodian or IT professional identifies as possibly containing responsive information, (iii) limit the collection and review of ESI to a reasonable date range based on the claims asserted, or (iv) use technology assisted review techniques.  The Requesting Party may suggest keyword search terms for consideration by the Producing Party.  The Producing Party will include any such search terms that do not create an undue burden, and shall inform the Requesting Party of objectionable search terms and propose alternative terms that reasonably limit the documents for review to a number proportional to the needs of the case and that are likely to capture responsive information.

      B.    <u>Search Methodology:</u>

        1.    Email and Non-Email: the Parties agree to search for and produce unique, responsive records from sources of accessible hard copy and ESI to the extent a custodian reveals that such locations may contain responsive information and such data is within the possession, custody or control of the Producing Party.  Mobile devices will not be included as a default data source due to proportionality considerations and the expectation that unique responsive data, if any, will be limited.  In the event that potentially relevant, unique data is identified on a mobile device, the parties will meet and confer.

## XII.   Preservation

A.      The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

B.      The Parties agree that data, including Protected Material, should be preserved for only the time for which this litigation is pending or is reasonably anticipated.  All Protected Material shall be maintained and or destroyed pursuant to normal business practice and/or local Data Protection Laws at the completion of this litigation.

C.      The Parties agree that, in accordance with Federal Rule of Civil Procedure 26(b), absent the showing of good cause, the circumstances of this case do not warrant the preservation, collection, review, or production of the following sources of ESI because they are either not reasonably accessible or not likely to contain additional relevant information from other sources whereby the associated burden and costs outweigh any benefit:

i.      Data from electronic backup systems.

ii.     Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics and "unallocated" space on hard drives.

iii.    Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems.

iv.     On-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located.

v.      Data stored on photocopiers, scanners and fax machines.

vi.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

vii.     Instant messages such as messages sent on Lync Online, Microsoft Communicator, or any other instant message platform.

viii.    Chat or instant messages such as messages sent via Teams private channels or group chats.

ix.     Server, system or network logs.

x.      Logs of calls made from cellular or land-line phones including voicemails.

xi.     Legacy data or data remaining from systems no longer in use that is unintelligible on the systems in use.  Computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file fragments.

## XIII.  Privilege and Privilege Logs

A.     The parties incorporate by reference herein, and as set forth below, the "Privileged Information" Section of the United States District Court for the District of Nebraska, Magistrate Judge Civil Case Management Practices, at 4-5:

1)     **Privilege Logs: <u>Fed. R. Civ. P. 26(b)(5)</u>.** To limit incurring potentially unnecessary expense and time in resolving discovery disputes over privilege and/or work product objections to discovery:

a.  A producing party need not produce a privilege log at the time it raises privilege/work product objections to document production requests.

b. If a privilege log is not produced when the privilege/work product objections are raised in response to document production requests, the parties must confer in good faith within 30 days thereafter to discuss the privilege/work product objections and discuss whether and to what extent a privilege log is necessary, including but not limited to:

(i) the time frame of any documents which must be listed (e.g., documents created pre- and post-litigation, a 5-year limit, etc);

(ii) whether documents created by certain authors/recipients (e.g., litigation counsel, claims agents, in-house counsel, etc.), or certain categories of documents (e.g., insurance claim files, third-party statements obtained by accident investigators, etc), are presumptively confidential communications;

(iii) whether the privilege log can list some or all of the withheld documents by category rather than individually; and

(iv) whether entry of a protective order, claw-back agreement, or Rule 502(d) order will advance the goals outlined in Rule 1 of the Federal Rules of Civil Procedure by eliminating or curtailing the need to create a privilege log and file discovery motions.

2) **Privilege Disputes.** If the parties cannot resolve a dispute over privilege/work product objections without court intervention:

a. The objecting party shall promptly contact the court and set a conference call to discuss the parties' respective positions regarding the dispute.

b. If the parties' dispute is not resolved after conferring with the court, the court will enter an order scheduling the following steps toward final resolution of the parties' dispute.

i) **The producing party** shall for each document, disclose a description of the document withheld with as much specificity as is practicable without disclosing its contents, including:

(a) the general nature of the document;

(b) the identity and position of its author;

(c) the date it was written;

(d) the identity and position of its addressee;

(e) the document's present location and the identity and position of its custodian; and

(f) the specific reason or reasons why it has been withheld from production or disclosure.

ii) **The non-producing party** may move to compel documents identified on the privilege log.

iii) **The producing party** may, in response to any motion to compel, seek a protective order to preserve the confidentiality of the documents identified in the privilege log. This motion for a protective order may also include a motion for in camera review.

3)   *In Camera* **Review**. If a request for in camera review is granted, absent a prior order to the contrary, the documents subject to review by the judge must be filed by the producing party under seal using the court's CM/ECF system. The party filing documents for in camera review is encouraged to contact the Clerk's office with any questions on how to properly file documents under seal.

4)   Nothing in this statement of general practices shall be construed as staying or extending the deadline for raising privilege or work product claims and objections in response to written discovery requests. Any privilege and/or work product objections which are not timely asserted will be deemed waived.

## XIV.   Production of Privileged Material

A.   No Waiver by Disclosure.  This order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence.  Subject to the provisions of this Order, if a Party or subpoenaed nonparty (the "Disclosing Party") discloses information in connection with the pending litigation that the Disclosing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Privileged Information"), the disclosure of that Privileged Information will not constitute or be deemed a waiver or forfeiture – in this or any other federal or state action – of any claim of privilege or work product protection that the Disclosing Party would otherwise be entitled to assert with respect to the Privileged Information and its subject matter.

B.   Notification Requirements; Best Efforts of Receiving Party.  A Disclosing Party must promptly notify the Party receiving the Privileged Information ("the Receiving Party"), in writing, that it has disclosed that Privileged Information without intending a waiver by the disclosure.  Upon such notification, the Receiving Party must – unless it contests the claim of attorney-client privilege or work product protection in accordance with paragraph (c) – promptly (i) notify the Disclosing Party that it will make best efforts to identify and return, sequester, or destroy (or in the case of electronically stored information, delete) the Privileged Information

and any reasonably accessible copies it has and (ii) provide a certification that it will cease

further review, dissemination, and use of the Privileged Information.  Within five business days

of receipt of the notification from the Receiving Party, the Disclosing Party must explain as

specifically as possible why the Protected Information is privileged.

      C.      Contesting Claim of Privilege or Work Product Protection.  If the Receiving Party

contests the claim of attorney-client privilege or work product protection, the Receiving Party

must – within a reasonable time period – move the Court for an Order compelling disclosure of

the information claimed as unprotected (a "Disclosure Motion").  The Disclosure Motion must

be filed under seal and must not assert as a ground for compelling disclosure the fact or

circumstances of the disclosure.  Pending resolution of the Disclosure Motion, the Receiving

Party must not use the challenged information in any way or disclose it to any person other than

those required by law to be served with a copy of the sealed Disclosure Motion.

      D.      Stipulated Time Periods.  The Parties may stipulate to extend the time periods set

forth in paragraphs (B) and (C).

      E.      Attorney's Ethical Responsibilities.  Nothing in this order overrides any

attorney's ethical responsibilities to refrain from examining or disclosing materials that the

attorney knows or reasonably should know to be privileged and to inform the Disclosing Party

that such materials have been produced.

      F.      Burden of Proving Privilege or Work-Product Protection.  The Disclosing Party

retains the burden – upon challenge pursuant to paragraph (C) – of establishing the privileged or

protected nature of the Protected Information.

      G.      *In camera* Review.  Nothing in this Order limits the right of any Party to petition

the Court for an *in camera* review of the Privileged Information.

H.     **Voluntary and Subject Matter Waiver.**  This Order does not preclude a Party from voluntarily waiving the attorney-client privilege or work product protection.  The provisions of Federal Rule 502(a) apply when the Disclosing Party uses or indicates that it may use information produced under this Order to support a claim or defense.

I.     **Review.**  Nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.  Further nothing contained herein is intended to reduce the time frame provided to the Disclosing Party to complete their review should they choose to do so.

J.     **Proportionality.**  Nothing contained herein is intended to limit a Party's proportionality and burden arguments specifically related to the costs to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

**XV.    Third Party Documents**

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing Party.  Nothing in this Stipulation is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

**XVI.   Good Faith**

The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulation.  If a Producing Party cannot comply with any

material aspect of this Stipulation, such Party shall inform the Requesting Party as to why compliance with the Stipulation was unreasonable or not possible within fifteen (15) days after so learning.  No Party may seek relief from the Court concerning compliance with the Stipulation unless it has conferred with other affected Parties to the action.

## XVII.   No Effect on Discovery or Admissibility

This Stipulation does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI.  The Parties are not waiving the right to seek any discovery, and the Parties are not waiving any objections to specific discovery requests.  Nothing in this Stipulation shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege that may be applicable.  Nothing in this Stipulation shall be construed to affect the admissibility of any document or data.  All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

## XVIII.   Costs and Burden

Any burdens placed on the Producing Party during this litigation, including during discovery, must be proportional to the litigation itself, including the nature of the claims and the amount in controversy.  *See* Fed. R. Civ. P. 1, Fed. R. Civ. P. 26(b)(2)(C).  All Parties reserve the right to seek shifting or sharing of certain discovery costs, including vendor and attorney fees, in appropriate circumstances.

## XIX.   Authenticity

A document produced in this litigation shall be presumed to be authentic if offered as evidence against the Party that produced it unless the Party (a) gave notice at the time of

production that the authenticity of the document may be challenged, including the reasons for such a challenge; or (b) shows good cause for its failure to give such notice at the time of production.

When documents produced in accordance with this Stipulation are used in any proceeding herein, including depositions, hearings, or trial, the image copy of documents shall be the copy used.  Extracted text files shall not be used in any proceeding as a substitute for the image of any document.  This paragraph does not apply to any Federal Rule of Evidence 1006 summary exhibits or summary demonstratives.

## XX.   Protective Order

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of the Protective Order.

## XXI.   Rolling Productions

The Parties understand that this Stipulation contemplates rolling productions of documents, and they acknowledge that nothing in this Order waives, restricts, or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation obligations prescribed in the Federal Rules of Civil Procedure, or the Parties' 502(d) obligations, and other obligations pursuant to the Agreed Confidentiality Order entered in this case.

## XXII.   Discovery Deficiency

If the Requesting Party has good cause to believe that the Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

1.  As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some evidence of a deficiency in the Producing Party's discovery process and explain their reasons for believing that additional efforts are reasonable and proportional.

2.  Upon a showing of good cause, the Parties will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional production criteria to cure the deficiency.

3.  If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties will submit the dispute to the Court in the form of a joint discovery letter.

## XXIII. Modification

This Stipulation may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

Stipulated to by:


/s/ Brandon L. Bogle
Brandon L. Bogle (Fla. Bar No. 52624)
Joshua R. Harris (Fla. Bar No. 124124)
William F. Cash III (Fla. Bar No. 68443)
LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR & MOUGEY, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502
(850) 435-7059
bcash@levinlaw.com

*Attorneys for Plaintiffs*

/s/ Michael K. Huffer
Michael K. Huffer – 18087
Ronald F Krause – 15980
Kathryn Cheatle – 24137
Cassem, Tierney, Adams, Gotch & Douglas
9290 West Dodge Road, Suite 302
Omaha, Nebraska 68114
Telephone: 402/390-0300
Facsimile: 402/390-9676
mhuffer@ctagd.com
rkrause@ctagd.com
kcheatle@ctagd.com

Carter F. Thurman
cthurman@hollingsworthllp.com
Matthew J. Malinowski
mmalinowski@hollingsworthllp.com
Robert E. Johnston, Esq.

rjohnston@hollingsworthllp.com
Shannon N. Proctor
sproctor@hollingsworthllp.com
Hollingsworth LLP
1350 I Street Northwest
Washington, District of Columbia  20005
(202) 898-5800

*Attorneys for Defendant*
*Novartis Pharmaceuticals Corporation*

Dated:  March 24, 2022

Pursuant to the parties' stipulation, (Filing No. 71), which is hereby approved,

IT IS SO ORDERED:

Cheryl R. Zwart
United States Magistrate Judge

## APPENDIX 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGBATES | ABC00000001 (Unique ID) | The Document ID Number associated with the first page of the document. |
| ENDBATES | ABC00000003 (Unique ID) | The Document ID Number associated with the last page of the document. |
| BEGATTACH | ABC00000001 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the first page of the parent document. |
| ENDATTACH | ABC00000008 (Unique ID Parent- Child Relationships) | The Document ID Number associated with the last page of the last attachment. |
| PAGES | 3 (Numeric) | The number of pages for a document. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive (vendor assigns). |
| DESIGNATION | Confidential, Highly Confidential, etc. | Please populate this field for all documents that carry a confidentiality designation, separate and apart from the stamping of produced TIFFs. If the document is only provided in native, this field would be populated with the designation the native file should have if printed. |
| REDACTED | Yes | Please populate this field for all documents that have a redaction. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| CREATEDDATE | MM/DD/YYYY | The date the document was created. *Parties acknowledge that the CREATEDATE field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location). |
| CREATETIME | HH:MM | The time the document was created. *Parties acknowledge that the CREATETIME field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location). |

21

| AUTHOR | Jsmith | The author of a document from extracted metadata.<br><br>*Parties acknowledge that the Author field may not actually reflect the author of the document. |
| --- | --- | --- |
| FROM | Joe Smith <jsmith@email.com> | The display name or e-mail of the sender of an e-mail. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the recipient(s) of an e-mail. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the copyee(s) of an e-mail. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name or e-mail of the blind copyee(s) of an e-mail. |
| SUBJECT | | The subject line of the e-mail. |
| CUSTODIAN | John Smith; Tim Jones; Finance Department | The custodian/source of a document. NOTE: If the documents are de-duped on a global level, this field should contain the name of each custodian from which the document originated. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including imbedded attachments). |
| MD5HASH (or equivalent) | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The relative path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers.<br><br>If the attachment or e-file does not extract any text, then OCR for the document should be provided (only to the extent the Producing Party OCR's the document for their own benefit). |

| RECORDTYPE | E-mail | Possible values include Email (Email body), Attachment (Email Attachment), eDoc (Native file). |
| --- | --- | --- |
| IMPORTANCE | URGENT | For e-mails with a corresponding importance designation |

** As it relates to the CUSTODIAN metadata field above, the Producing Party reserves the right to produce in multiple fields (e.g., CUSTODIAN + DUPLICATE CUSTODIAN) since the metadata may already be exported and logged as such.

** Same is true with all DATE and TIME Fields.  These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

<u>**Appendix 2: Load File Formats**</u>

<u>**Image Load Files**</u>
- Every document referenced in a production image load file must have all corresponding images, text and metadata.
- The name of the image load file must mirror the name of the delivery volume and should have a .LFP, or .OPT extension.
- The volume names must be consecutive (e.g., ABC001, ABC002…). If, for any reason, the volume names are not consecutive, that fact and the reason for the discrepancy shall be promptly disclosed to the party receiving the documents.
- The load file must contain one line per image.
- Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image.
- Load files must not span across media.

<u>**Metadata Load Files**</u>
- The metadata load file must use the following delimiters: Column delimiter:
  - ASCII 020
  - Text qualifier: ASCII 254
  - New line:  ASCII 174
- Data for documents must be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document.
- The first record must contain the field names in the order of the data set forth in Appendix 1.
- All date/time fields must be produced in "MM/DD/YYYY  HH:MM:SS AM/PM (UTC)" format, null dates will be blank.
- A carriage-return line-feed must be used to indicate the start of the next document. Load files must not span across media.
- The name of the metadata load file must mirror the name of the delivery volume, and must have a .DAT extension.
- The volume names must be reasonably consecutive (e.g., ABC001, ABC002…).